UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| VICKIE D. CHILDS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 3:05-CV-589 |
| | ) | (JARVIS/SHIRLEY) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's motion for summary judgment [Doc. 14] and the defendant's motion for summary judgment. [Doc. 16]. Plaintiff Vickie D. Childs ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

The ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant has an impairment or combination of

impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c). These include: depression, degenerative disk disease in the lumbar spine, degenerative joint disease, peripheral polyneuropathy, Charcot-Marie-Tooth Syndrome, Hepatitis C, and spurs in the feet.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. 404.1527 and 416.927).

7. The claimant has the residual functional capacity to perform sedentary work, lifting ten pounds, walking for up to three hours in an eight-hour day, standing for up to four hours in an eight hour day, and sitting for six or more hours in an eight hour day; sitting and standing as needed for comfort; avoiding jobs requiring far vision acuity; avoiding more than occasional climbing, bending, stooping, crouching, and balancing; avoiding crawling and kneeling; avoiding exposure to unprotected heights and hazards; avoiding jobs requiring heavy gripping with either hand; avoiding temperature extremes and high humidity; avoiding work exposing her to dust, fumes, smoke, chemicals, and noxious gases.

8. The claimant is unable to perform any of her past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

9. The claimant is a younger individual (20 C.F.R. §§ 404.1563 and 416.963).

10. The claimant has a "high school education" (20 C.F.R. §§ 404.1564 and 416.964).

> 11. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. §§ 404.1568 and 416.968).
>
> 12. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 C.F.R. § 416.967).
>
> 13. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.21 as a framework for decision making, there are a significant number of jobs in the national economy which she could perform.
>
> 14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

[Tr. 25].

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to evaluating whether substantial evidence supports the ALJ's conclusion and whether the ALJ applied proper legal standards. Key v. Callahan, 109 F.3d 273 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001)(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). To determine whether substantial evidence exists, the Court must review the administrative record as a whole. Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994). Reversal of the Commissioner's findings is not appropriate "merely because there exists in the record substantial evidence to support a different conclusion." Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001); see also Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the court is persuaded that the Secretary's

findings are "legally insufficient," they should not be disturbed).  The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility.  Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Plaintiff argues on appeal that substantial evidence did not support the decision of the ALJ, because: the ALJ erred by posing a hypothetical to the vocational expert which did not take into consideration Plaintiff's mental and psychological restrictions; the ALJ erred by posing a hypothetical to the vocational expert which included only one accommodation for Plaintiff's problems with her hands; the residual functional capacity ("RFC") assessment established by the ALJ was not supported by the record as a whole; the ALJ erred by finding that Plaintiff's only mental impairment was depression; and the ALJ erred by not considering the record as a whole. [Doc. 15].

The Commissioner contends that substantial evidence supports the ALJ's decision regarding the issues presented on appeal by Plaintiff.  The Commissioner argues that the ALJ correctly concluded that plaintiff was not disabled, because she could perform a limited range of sedentary jobs and that a significant number of such jobs existed in the regional and national economy, given her medical and vocational characteristics. [Doc. 17].

Plaintiff first argues that the hypothetical posed by the ALJ to the vocational expert did not take into consideration Plaintiff's mental and psychological restrictions.  Plaintiff contends that, because the hypothetical was incomplete, that the ALJ erred by relying upon the testimony of the vocational expert.

The Commissioner argues that the ALJ did not err by relying upon the vocational

4

expert's testimony. Instead, the Commissioner points out that it was Plaintiff's counsel who asked the vocational expert to consider whether a person suffering from a limited ability to concentrate and persist, socially interact, and adapt to changes in the work setting would be able to perform the jobs previously described by the vocational expert. The Commissioner further argues that the vocational expert indicated that a hypothetical individual suffering from the mental limitations described by Plaintiff's counsel would still be able to perform the jobs described by the vocational expert so long as the limitations were of moderate severity or less.

A vocational expert's testimony can constitute substantial evidence only if the testimony is in response to a hypothetical question that accurately portrays a claimant's abilities. Davis v. Sec'y of Health & Human Servs., 915 F.2d 186, 189 (6th Cir. 1990). However, if a hypothetical posed on cross-examination cures the error made by the ALJ in questioning the vocational expert, then the ALJ's error is harmless. See Nash v. Sec'y of Health & Human Servs., No. 94-5376, 1995 U.S. App. LEXIS 15129, at *9 (6th Cir. June 15, 1995); see also Shkabari v. Gonzales, 427 F.3d 324, 328 (6th Cir. 2005) (holding that "no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

The Court notes that the mental status exam performed by Dr. Kenney on March 11, 2002, indicates that Plaintiff's ability to understand and remember was not significantly limited, and that Plaintiff had limited abilities to sustain concentration and persistence, interact socially, and adapt. [Tr. 298]. The mental capacity assessment provided by Dr. Abraham on March 28, 2002,

indicates that Plaintiff faces no significant limitations in twelve[1] out of twenty areas and suffers from moderate limitations in eight[2] of twenty areas. [Tr. 314-15]. Plaintiff was hospitalized in Lakeshore Mental Health Institute ("Lakeshore") for suicidal ideation and depression on January 16, 2006,[3] but was released on January 19, 2006, with a prognosis of "[f]air with follow up treatment" and a GAF of 65.[4] [Tr. 682-700]. Additionally, the Court notes that there are other reports by varying medical doctors of depression, including a report dated October 30, 2003, describing Plaintiff as a "very sad depressed appearing woman," [Tr. 444] but that none of these reports indicate that Plaintiff suffers

---

[1] Plaintiff suffers from no significant limitations in the areas of: ability to remember locations and work-like procedures; ability to understand and remember very short and simple instructions; ability to carry out very short and simple instructions; ability to sustain an ordinary routine without special supervision; ability to work in coordination with or proximity to others without being distracted by them; ability to make simple work-related decisions; ability to ask simple questions or request assistance; ability to accept instructions and respond appropriately to criticisms from supervisors; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to be aware of normal hazards and take appropriate precautions; ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently of others.

[2] Plaintiff suffers from moderate limitations in the areas of: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to respond appropriately to changes in the work setting.

[3] Plaintiff's hospitalization occurred approximately one month after Plaintiff testified before the ALJ and all records relating to that hospitalization were received by the ALJ some time after the hearing.

[4] A GAF of 65 is indicative of "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

from mental or psychological limitations that are of greater than moderate severity.

The ALJ did not include any mental or psychological limitations in the hypothetical he posed to the vocational expert. [Tr. 741-42]. However, on cross-examination, Plaintiff's counsel asked the vocational expert to consider a hypothetical individual suffering from a limited ability to concentrate and persist, socially interact, and adapt to changes in the work setting. [Tr. 742-42]. The Court finds that the ALJ erred by not including Plaintiff's mental and psychological limitations in his hypothetical. However, the Court also finds that Plaintiff cured that error on cross-examination. The vocational expert indicated that a hypothetical individual suffering from the described mental limitations would still be able to perform the jobs described by the vocational expert so long as the limitations were of moderate severity or less. Given the mental health reports of Dr. Kenney, Dr. Abraham, and the medical records from Lakeshore, the Court finds that Plaintiff suffers from moderate mental and psychological limitations in the areas of ability to concentrate and persist, socially interact, and adapt to changes in the work setting. Therefore, the Court finds that, as the vocational expert testified, Plaintiff is capable of performing the jobs described by the vocational expert and the ALJ did not err by relying on the testimony of the vocational expert, as supplemented on cross-examination.

Plaintiff next argues that the ALJ erred by posing a hypothetical to the vocational expert which included only one accommodation for Plaintiff's problems with her hands. Plaintiff argues that the only accommodation made in the ALJ's hypothetical for Plaintiff's hand problems was an inability to do heavy gripping. Plaintiff argues that Plaintiff suffers from more severe limitations in the use of her hands, that those limitations were not properly accounted for in the ALJ's hypothetical, and that the record supports Plaintiff's claims of hand limitations.

The Commissioner argues that the record supports the ALJ's decision to include only a limitation on heavy lifting when accommodating Plaintiff's hand problems. The Commissioner further argues that Plaintiff fails to point out what other accommodations should have been made by the ALJ. The Commissioner points out that on July 31, 2002, Dr. Cunningham opined that Plaintiff "would have limited use of her [right] hand for any work activities because of weakness." [Tr. 396]. However, the Commissioner further points out that on November 4, 2003, Dr. Johnson opined that "[r]ange of motion and strength in the hands is normal except for the right thumb which is mildly decreased." [Tr. 418]. The Commissioner contends that the ALJ's finding of a limitation on heavy lifting is in keeping with Dr. Johnson's more recent medical findings.

The Sixth Circuit has held that "[p]rovided that they are based on sufficient medical data, '[t]he medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002). However, federal regulations require that the opinion of a treating physician be given controlling weight only when the "treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When the treating physician's opinion is not given controlling weight, it is instead balanced against a number of factors described in the regulations, including the consistency of the treating physician's opinion with the rest of the record and whether the treating physician's opinion is supported by objective evidence. See 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

The Court notes that on July 31, 2002, Dr. Cunningham, one of Plaintiff's treating physicians, opined that Plaintiff had subjective weakness in her right hand, lacked a bit of flexion,

8

but had regained excellent range of motion and had excellent thumb stability. Dr. Cunningham indicated that the ulnar collateral is "nice and stable." Dr. Cunningham further opined that Plaintiff "would have limited use of right hand for any work activities due to her weakness." [Tr. 396].

However, on November 4, 2003, approximately fifteen months after Plaintiff's examination by Dr. Cunningham, Dr. Johnson opined that "[r]ange of motion and strength in the hands is normal except for the right thumb which is mildly decreased." [Tr. 417]. Furthermore, on March 11, 2003, Dr. Miller indicated in his physical assessment of Plaintiff that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and suffered from the manipulative limitation of a limited ability to reach in all directions, but faced no limitation in handling (gross manipulation) or fingering (fine manipulation). [Tr. 381-88]. On November 20, 2003, Dr. Burr indicated in his physical assessment of Plaintiff that Plaintiff could occasionally lift twenty pounds, frequently lift 10 pounds, and suffered from no manipulative limitations. [Tr. 433-40].

I find no error with the ALJ's decision to accommodate Plaintiff's hand problems with the limitation of "no heavy gripping." One of the factors for balancing the weight of medical evidence is the consistency of the medical evidence with the rest of the record. See 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). Given the conflict between Dr. Cunningham's July 31, 2002, opinion that Plaintiff would suffer from limited use of her right hand, and the subsequent opinions of Drs. Johnson, Miller, and Burr that Plaintiff faced only minor limitations in the use of her hands, it was well within the ALJ's purview to weigh all of the medical opinions before him and find that the more recent opinions were more credible. In light of the opinions of Drs. Johnson, Miller, and Burr, the Court finds the limitation of "no heavy gripping" to be a reasonable accommodation of Plaintiff's hand problems.

9

Plaintiff's third argument is that the residual functional capacity ("RFC") assessment established by the ALJ was not supported by the record as a whole.[5] Plaintiff argues that the only RFC assessment on the record supporting the ALJ's RFC determination is that of a non-examining physician, dated November 20, 2003. Plaintiff contends that the most recent RFC determination made by Dr. Johnson, the agency's consulting examining physician, indicated that Plaintiff was only capable of sitting for five hours, not six, and could walk or stand for only two hours, limiting Plaintiff to a seven hour workday. Plaintiff argues that an ALJ may not disregard the opinion of a consulting examining physician when the opinion is favorable to a claimant. Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1054 (6th Cir. 1983).

The Commissioner argues that the ALJ's RFC assessment was supported by the record. The Commissioner points out that Dr. Johnson saw Plaintiff three times, and that Dr. Johnson's first RFC determination, dated May 3, 2002, indicated Plaintiff could sit for six or more hours, stand for four hours, or walk for three hours during an eight hour workday. The Commissioner contends that it was only on his third visit that Dr. Johnson provided an RFC which limited Plaintiff to five hours of sitting and two hours of walking or standing. However, the Commissioner notes that neither Plaintiff nor Dr. Johnson provided any explanation for the change in Dr. Johnson's opinion. The Commissioner argues that an ALJ can ignore a change in a physician's opinion when the physician fails to explain the rationale behind the change. Stanley v.

---

[5]The ALJ found that Plaintiff retained the RFC to perform sedentary work and was capable of :
> lifting ten pounds, walking for up to three hours in an eight-hour day, standing for up to four hours in an eight-hour day, and sitting for six or more hours in an eight-hour day; sitting and standing as needed for comfort; avoiding jobs requiring far vision acuity; avoiding more than occasional climbing, bending, stooping, crouching, and balancing; avoiding jobs requiring heavy gripping with either hand; avoiding temperature extremes and high humidity; avoiding work exposing her to dust, fumes, smoke, chemicals, and noxious gases.

Sec'y of Health & Human Servs., 39 F.3d 115, 118 (6th Cir. 1994).

An ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but the ALJ must "consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence." 20 C.F.R. § 404.1527(f)(2)(I). The ALJ must evaluate the consultative physician's opinion using the relevant factors in 20 C.F.R. § 404.1527(a)-(e), the same factors used to analyze the opinion of a treating physician. See 20 C.F.R. § 404.1527(f)(2)(ii). One of the factors the ALJ must consider is whether a doctor provides an explanation for his opinion. See 20 C.F.R. § 404.1527(d)(3). When a doctor changes his medical opinion without providing a rationale for the change, the ALJ does not err by disregarding the change. See Stanley, 39 F.3d at 118 (holding that an ALJ did not err by declining to refer to the opinion of a doctor who first opined that the plaintiff could perform sedentary work then later opined that the plaintiff was disabled, but did not support the change in opinion with any objective medical evidence).

The Court finds that the ALJ did not err in disregarding the November 4, 2003, RFC assessment of Dr. Johnson. In his November 4, 2003, assessment, Dr. Johnson opined that Plaintiff could sit for five hours and stand or walk for two hours in an eight hour day. [Tr. 419]. In his May 3, 2002, RFC assessment, Dr. Johnson opined that Plaintiff could sit for more than six hours, stand for four hours, and walk for three hours in an eight hour day. [Tr. 322]. Dr. Johnson did not provide any objective medical evidence or explanation for the change in his RFC assessment. In fact, Dr. Johnson noted in his assessment that "[w]ork recommendations are somewhat difficult based on this exam," but that he thought Plaintiff "does have some work limitations." [Tr. 419]. Dr. Burr opined on November 20, 2003, that Plaintiff could sit for about six hours and stand or walk for about six

11

hours in an eight hour day. [Tr. 434]. In light of Dr. Johnson's failure to explain the change in his opinion, and in light of the contemporaneous opinion of Dr. Burr that Plaintiff was capable of sitting for six hours, just as Dr. Johnson had opined in 2002, the Court finds that the ALJ did not err in finding that Plaintiff retained the RFC to perform sedentary work.

Plaintiff's fourth argument is that the ALJ erred by finding that Plaintiff's only mental impairment was depression. Plaintiff contends that she suffers from a possible somatoform disorder.[6] Plaintiff further contends that there are several references in the medical record to support a finding of a possible somatoform disorder.[7] Plaintiff argues that her doctors treated all of her symptoms, even when the doctor acknowledged a somatic element, thus the ALJ should have considered the possibility of a somatoform disorder.

The Commissioner argues that the ALJ did not err by failing to find that Plaintiff suffers from a somatoform disorder. The Commissioner contends that the record does not support a finding of a somatoform disorder. The Commissioner points out that Plaintiff underwent psychiatric hospitalization in January, 2005, and that none of the psychiatric hospital records indicated a diagnosis of somatoform disorder, nor has any other physician of record diagnosed Plaintiff as suffering from a somatoform disorder.

Federal regulations place the burden of proving the existence of a disability on the claimant. See 20 C.F.R. § 404.1512(a). Regulations further require that the claimant "must provide medical evidence showing that [the claimant has] an impairment(s) and how severe it is." 20 C.F.R.

---

[6]"A group of psychiatric disorders characterized by physical symptoms that suggest but are not fully explained by a physical disorder and that cause significant distress or interfere with social, occupational, or other functioning." The Merck Manual 1508 (Mark H. Beers & Robert Berkow eds., 17th ed.1999).

[7]The Court notes that Plaintiff does not actually cite to any references of a possible somatoform disorder in the record.

§ 404.1512(c). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" Howard, 276 F.3d at 238.

Plaintiff bears the initial burden of providing credible medical evidence proving that she suffers from a somatoform disorder. The Court, after extensive review of the record, can not find any medical opinion of record that diagnosis Plaintiff with a somatoform disorder. The Court notes that there are multiple indications by doctors that some of Plaintiff's medical complaints were unsupported by physical findings [Tr. 387, 390, 409], and Dr. Johnson indicated that work recommendations were difficult "because of psychosomiasis" [Tr. 322], but there is no record of a somatoform disorder diagnosis. Without some credible medical evidence to support her claim, the Court must find that Plaintiff has not met her burden of proof in showing that she suffers from a somatoform disorder. Therefore, the Court finds that the ALJ did not err by failing to find that Plaintiff suffered from a somatoform disorder and from failing to consider the possible existence of a somatoform disorder in his opinion.

Finally, Plaintiff argues that the ALJ erred by not considering the record as a whole. Plaintiff contends that the record, as a whole, proves that, among other things, Plaintiff suffers from problems with her feet, ankles, shoulders, hands, thumbs, and back. Plaintiff further argues that the ALJ failed to give adequate consideration to Plaintiff's multiple medical conditions.

The Commissioner argues that the ALJ properly considered the record as a whole and, instead, simply found that Plaintiff's allegations were not credible. The Commissioner contends that the ALJ properly explained the reasoning behind his adverse credibility finding, and that the record as a whole simply does not support Plaintiff's claim of disability.

"Substantiality of the evidence must be based upon the record taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). However, the Sixth Circuit has held that an

ALJ has considered the record as a whole when the ALJ discussed the medical evidence before him. See Brown v. Comm'r of Soc. Sec., No. 97-2067, 1998 U.S. App. LEXIS 17796, at *4 (6th Cir. July 30, 1998); Holt v. Comm'r of Soc. Sec., No. 96-5101, 1996 U.S. App. LEXIS 22259, at *3 (6th Cir. Aug. 12, 1996). Furthermore, this Court may not decide questions of credibility which were properly before the ALJ. See Garner, 745 F.2d at 387.

The Court finds that the ALJ considered the record as a whole in making his decision. The ALJ's decision includes a thorough summary of the medical evidence before the ALJ, indicating that the ALJ did review the record and consider the record as a whole. Furthermore, given the "ALJ's unique opportunity to observe the claimant and judge her subjective complaints," it was well within the ALJ's purview to find that the evidence presented by plaintiff was not as credible as that presented by the Commissioner and to act accordingly. Buxton, 246 F.3d at 773. There are multiple factors which support the ALJ's adverse credibility finding, including: evidence that Plaintiff traveled to Florida to care for family members during the period when Plaintiff alleges she was rarely leaving the house and required help in her own daily living activities [Tr. 601]; the fact that the alleged onset date does not coincide with any increase in symptoms [Tr. 22]; Plaintiff's testimony that she was last employed at Kroger in July of 2001 [Tr. 724], but the doctor's note dated November 20, 2001 indicates that Plaintiff stated she was afraid she would lose her job at Kroger because of back pain [Tr. 455]; the doctor's note dated July 19, 2004, prescribing activity as tolerated and encouraging exercise and activity [Tr. 663]; the doctor's note dated August 19, 2004, indicating that Plaintiff did not appear to be in any acute distress but instead looked tired and was walking slowly [Tr. 597]; and the doctor's note dated November 2, 2004, indicating that Plaintiff was doing fine and stable [Tr. 671]. Therefore, after considering the record as a whole, the Court finds that the ALJ did not err by finding that Plaintiff and her allegations of disability were not

14

credible.

For the reasons stated herein, it is hereby **RECOMMENDED**[8] that the plaintiff's motion for summary judgment [Doc. 14] be **DENIED** and that the defendant's motion for summary judgment [Doc. 16] be **GRANTED**.

Respectfully submitted,

  s/ C. Clifford Shirley, Jr.  
United States Magistrate Judge

---

[8]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).